UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REGIONS BANK                                        CIVIL ACTION

VERSUS                                                 NO. 15-5084

GATOR EQUIPMENT RENTALS,              SECTION "R" (5)
LLC, ET AL.


## ORDER AND REASONS


Plaintiff Regions Bank moves for summary judgment against defendants for amounts due under three promissory notes executed by Gator Equipment Rentals, LLC, and for a judgment recognizing the validity of various guaranties, mortgages, security interests, and assignments executed in favor of Regions Bank to guarantee Gator Equipment's debt.[1]  Because there is no question of material fact that Gator Equipment is in default and that Regions holds valid notes and security interests, the Court grants the motion for summary judgment.

---

[1]      R. Doc. 30.

## I.    BACKGROUND

Regions extended several commercial loans to Gator Equipment, LLC, which were secured by itself and defendants Gator Equipment Rentals of Fourchon, LLC; Gator Crane Service, LLC; and Gator Equipment Rentals of Iberia, LLC, and by individual defendants Lovencie John Gambarella, Betty Rae Gambarella,[2] Norman J. Schieffler, Jr., Misty Lynn Schieffler, Joey Don Pierce, and Shanna Guidry Pierce.[3]

Specifically, on September 9, Regions and Gator Equipment executed a Business Loan Agreement, which contemplated an ongoing financing relationship between the parties.  The Business Loan Agreement provided that all commercial loans issued by Regions to Gator Equipment "shall be and remain subject to the terms and conditions of this Agreement."[4] Among these conditions was that Gator Equipment "[n]ot permit its ratio of EBITDAR to Interest Expense and prior period Current Maturities of Long Term Debt plus Rent and Lease Expenses for such fiscal year to be at any time less than 1.25 times, to be measured annually."[5]  The Business Loan

---

[2]    On or about February 25, 2016, after litigation began, Betty Rae Gambarella passed away. R. Doc. 39-1 at 2.  On August 11, 2016, Joey Don Pierce, the Independent Administrator for Betty Rae Gambarella was properly substituted for Gambarella as a defendant. R. Doc. 49.

[3]    R. Doc 1 at 4.

[4]    R. Doc. 30-3 at 1.

[5]    *Id.* at 2.

Agreement also specified several events of default, including failing to make any payment when due under the Loan, and failing to comply with or to perform any other term, obligation, covenant, or condition contained in the Agreement.[6]

The Agreement also contained an acceleration clause, which gave Regions the option to declare all of Gator Equipment's indebtedness immediately due and payable if Gator defaulted and entitled Regions to all the rights and remedies provided in the "Related Documents."[7]  According to the Business Loan Agreement, "Related Documents" include, among other things, all promissory notes, guaranties, security interests, and mortgages related to loans issued by Regions to Gator Equipment.[8]

Regions and Gator Equipment executed three promissory notes subject to the Business Loan Agreement.  The first was executed on December 23, 2011 in the principal amount of $395,874.53.[9]  Gator Equipment agreed to pay the principal and interest due on this note in 60 consecutive monthly installments, with the first payment due on January 23, 2012.[10]  The second and third promissory notes were both executed on

---

[6]     *Id.* at 3.
[7]     *Id.*
[8]     *Id.* at 6.
[9]     *Id.* at 10.
[10]    *Id.*

November 5, 2013. The larger note was in the principal amount of $3,621,350.71, while the smaller note was in the principal amount of $500,000.[11]  The first installments for both notes were due on December 5, 2013.[12]

In connection with the Business Loan Agreement and promissory notes, the defendants executed security agreements, guaranties, mortgages, and assignments to secure Gator Equipment's indebtedness. These documents include, among other things:

- Three security agreements executed by Gator Equipment, which, as modified in December 2014, granted Regions a continuing security interest in all of Gator Equipment's inventory, accounts, equipment, general intangibles and fixtures, inventory and other tangible property;[13]

- A "Multiple Indebtedness Mortgage" executed by Gator Equipment, which granted Regions a mortgage on Gator Equipment's commercial property;[14]

- Numerous "Commercial Guarant[ies]," in which various defendants guaranteed payment of Gator Equipment's present and future debts to Regions;[15]

---

[11]     *Id.* at 12.
[12]     *Id.* at 7, 12.
[13]     *Id.* at 15-32 (Gator Equipment's security agreements); *id.* at 33-56 ("Waiver and First Amendment to Commercial Security Agreements").
[14]     *Id.* at 57-74.
[15]     *Id.* at 75-101; R. Doc. 30-4 at 1-17.

4

- Several "Multiple Indebtedness Mortgages," executed by the individual defendants, granting Regions mortgages on their residential properties to secure Gator Equipment's debts;[16] and

- Two "Assignment[s] of Life Insurance as Collateral," executed by defendants Norman Schieffler and Pierce assigning their life insurance policies to Regions as security for Gator Equipment's present and future indebtedness.[17]

At some point, Regions' loans to Gator Equipment were backed by an additional guarantor, the United States Small Business Administration ("SBA").  It is undisputed, however, that the loans are no longer subject to an SBA guarantee.[18]

## A.   The Litigation

On October 10, 2015, Regions filed this lawsuit, seeking both collection of unpaid sums and a judgment recognizing the validity and enforceability of the security agreements, guaranties, mortgages, and assignments created by the various loan documents.[19]   On February 8, 2016, Regions filed this motion for summary judgment.   Regions submits evidence that Gator Equipment has been unable to satisfy its debts since August 2015.   In support, Regions submits the affidavit of its Vice President, Thomas

---

[16]     R. Doc. 30-4 at 18-34 (Gambarella's mortgage); *id.* at 35-51 (Schieffler's mortgage); *id.* at 52-69 (Pierce's mortgage).

[17]     *Id.* at 69-70 (Schieffler's assignment); *id.* at 71-72 (Pierce's assignment).

[18]     *See* R. Doc. 32-11 at 12; R. Doc. 33 at 10.

[19]     R. Doc. 1.

Bacarella, who attests that Gator Equipment defaulted under the Business Loan Agreement by failing to pay the monthly installments due under each of the three promissory notes in August 2015 and each payment due since that date.[20]   Bacarella also avers that Gator Equipment defaulted by failing to satisfy the Business Loan Agreement's debt service coverage ratio provision based upon its December 2014 financial statements,[21] and by selling collateral without delivering the proceeds to Regions to be applied to the outstanding amounts due.[22]

The record reflects that Regions notified Gator Equipment and its guarantors that the loans were in default and that it was accelerating all sums due under the promissory notes by letter dated September 14, 2015.[23] Regions demanded payment of all principal, accrued interest, late charges, and other fees by September 21, 2015.[24]   According to Bacarella, Gator Equipment and its guarantors failed to make payment by the stated deadline.[25]   Bacarella attests that the total balance due under the loan documents is $4,220,590.72, plus interest that continues to accrue after

---

[20]   R. Doc. 30-5 at 3 ¶ 8 (Regions' Statement of Undisputed Material Facts).

[21]   *Id.* at 3 ¶ 9.

[22]   *Id.* at 3 ¶ 10.

[23]   R. Doc. 30-4 at 73-79 (September 14, 2015 default letter).

[24]   *Id.* at 78.

[25]   R. Doc. 30-5 at 5 ¶ 18 (Regions' Statement of Uncontested Facts).

February 6, 2016, and all fees, expenses, attorneys' fees and costs that arise under the loan documents that have accrued as of February 5, 2016 and that continue to accrue thereafter.[26]  In addition, Regions submits copies of the various loan agreements signed by the parties.[27]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.  1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."

---

[26]     R. Doc. 30-1 at 15-16.
[27]     *See generally* R. Doc. 30-3; R.Doc. 30-4.

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

      If the dispositive issue is one on which the movant will bear the burden of proof at trial, the movant "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

      If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56

mandates the entry of summary judgment, after adequate time for
discovery and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial."
(quoting *Celotex*, 477 U.S. at 322)).

In nonjury cases, such as this one,[28] where the judge is the ultimate
finder of fact, the Fifth Circuit suggests that a "more lenient standard for
summary judgment" is appropriate. *U.S. Fid. & Guar. Co. v. Planters Bank
& Trust Co.*, 77 F.3d 863, 865 (5th Cir. 1996). Specifically, at the summary
judgment stage of a bench trial, the judge may have "the limited discretion
to decide that the same evidence, presented to him or her as trier of fact in a
plenary trial, could not possibly lead to a different result." *Id.* at 866.  That
is, "if there are no issues of witness credibility, the court may conclude on
the basis of the affidavits, depositions, and stipulations before it, that there
are no genuine issues of material fact, even though decision may depend on
inferences to be drawn from what has been incontrovertibly proved." *Id.*
Thus, "if a trial on the merits will not enhance the court's ability to draw
inferences and conclusions," then the court should draw those inferences

---

[28]    R. Doc. 31 at 3 (February 18, 2016 Scheduling Order noting that
"[t]rial will commence . . . before the District Judge without a jury").

"without resort to the expense of trial." *In re Placid Oil Co.*, 932 F. 2d 394, 398 (5th Cir. 1991).

## III.   DISCUSSION

To recover on a promissory note, the plaintiff must show that "1) the debtor signed it, 2) the plaintiff is the present holder of the note, and 3) the note is in default." *LSREF2 Baron, LLC v. Lindsey*, No. 13-2910, 2014 WL 2158489, at *4 (W.D. La. May 22, 2014) (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).  The Bacarella affidavit establishes that Regions is the holder of the promissory notes and the exhibits to the affidavit include the Business Loan Agreement and copies of all the various agreements entered into and signed by the parties.  The Business Loan Agreement makes clear that any failure to make timely payments under any of the three promissory notes constitutes a default.[29] The Bacarella affidavit additionally attests that neither Gator Equipment nor any of its guarantors have made any payments due under the Business Loan Agreement since August 2015.[30]   Therefore, under the plain terms of the Business Loan

---

[29]      R. Doc. 30-3 at 3.
[30]      R. Doc. 30-2 at 6 ¶ 7.  Defendants submit evidence that they have made a payment of approximately $55,000 to Regions, though it is not clear when this payment was made. R. Doc. 37-1 at 2-3.  This payment is addressed below.

Agreement, Gator Equipment has defaulted, and the individual defendants are liable due to their position as Gator Equipment's guarantors.

Defendants have put forward no evidence to suggest that they are not in default of the Business Loan Agreement. Indeed, defendants have raised no genuine dispute relating to the validity of the notes, guarantees, security agreements and various loan agreements; to Region's status as the owner and holder of the notes and various loan agreements; or to defendants' defaults on the various loan agreements. Instead, defendants assert arguments that focus on the SBA's decision to discontinue its guarantee, which this Court rejected in a previous order.[31] These arguments, as well as the additional technical arguments made by defendants will be addressed in turn.[32]

### A.    The SBA's Withdrawal of its Guarantee

Defendants again argue that Regions may have been responsible for the SBA's decision to discontinue its guarantee and that this "culpability"

---

[31]    *Regions Bank v. Gator Equipment Rentals, LLC, et al*, No. 15-5084 (E.D. La. July 1, 2016) (Order denying defendants' Rule 56(d) motion).

[32]    Defendant Joey Don Pierce, in his capacity as the Administrator for Betty Rae Gambarella's estate, filed a separate opposition to Regions' motion for summary judgment. R. Doc. 39. The only ground for opposition was that Betty Rae Gambarella had since passed away and that Regions had yet to substitute her Administrator as a proper party. As Joey Don Pierce was substituted for Betty Rae Gambarella on August 11, 2016, this argument is now moot.

could reduce or eliminate the defendants' liability to Regions for Gator Equipment's indebtedness.[33]   Defendants also renew their argument that depending on the timing of the SBA's withdrawal, certain late fees and prepayment fees may be contrary to SBA regulations and are therefore invalid, or, that in the very least, there remains a genuine factual dispute over the validity of the fees.[34]   As these arguments have already been rejected in detail by this Court, this order will deal with them in an abbreviated manner.[35]

As before, defendants' argument that SBA's withdrawal of its guarantee affects defendants' liability to Regions misunderstands SBA's loan guarantee program.   Section 7(a) of the Small Business Act authorizes the SBA to finance qualified small businesses.   *See* 15 U.S.C. § 636(a) (authorizing general business program loans).   Section 7(a) loans come in three forms: (1) a direct loan by the SBA; (2) an immediate participation loan by a lender and the SBA; or (3) a guaranteed or deferred participation loan. 13 C.F.R. § 120.2(a).   Unlike other loans, guaranteed loans do not involve the SBA's loaning money directly to the small business.   Instead, the SBA guarantees a portion of a loan issued by a private lender--in this case,

---

[33]   R. Doc. 37-6 at 7-9.
[34]   *Id.* at 10-11.
[35]   *See* R. Doc. 34 at 14-22 for this Court's reasoning.

Regions.  If the small business borrower defaults, then upon the lender's demand, the SBA is required to purchase the guaranteed portion of the loan from the lender.  13 C.F.R. § 120.520(a)(1).  The SBA then stands in the lender's shoes, and it may pursue the borrower and any pledged collateral for the outstanding balance.  *Rooster's Grill, Inc. v. Peoples Bank*, 965 F. Supp. 2d 770, 774 (S.D. Miss. 2013).  The SBA does not, however, insure the borrower against the risks associated with commercial loans.  *Id.* Therefore, the SBA's loan guarantee program is meant to protect *lenders* from the risk of default, not to indemnify *borrowers*.

That *Regions* once enjoyed governmental protection against the risk of default in the form of an SBA guarantee has no bearing on *Gator Equipment's* duty to pay amounts due under the promissory notes.  Nor does it affect the guarantees, security agreements, mortgages, and assignments that the defendants executed in favor of Regions as security for Gator Equipment's debts.  Thus, any factual dispute regarding SBA's decision to withdraw its guarantee does not defeat Regions' motion for summary judgment.

To resist this conclusion, defendants reassert three arguments that the Court has already rejected.  First, defendants suggest that they may have a claim against Regions for causing the SBA's withdrawal since that

13

withdrawal made it harder to refinance Gator Equipment's debt.[36]  Second, defendants argue that Regions' conduct, which allegedly caused the SBA to withdraw its guarantee, establishes that Regions violated its obligation of good faith and fair dealing to Gator Equipment--which could, in turn, reduce or eliminate defendants' liability under the loan documents.[37]  Third, defendants argue that certain late fees and prepayment fees sought by Regions are contrary to SBA regulations and invalid.[38]

Defendants cannot point to any evidence that Regions caused the SBA to withdraw its guarantee, but even if they could, it would not create a factual dispute sufficient to defeat Regions' motion for summary judgment. As the Court explained in its July 1, 2016 order, the SBA's discontinuation of its loan guarantee does not vest defendants with a claim against Regions or a defense to liability under the loan documents. Second, while the obligations of good faith and fair dealing are implicit in any agreement between Regions and defendants, this duty cannot contradict or override the express terms of the written agreement. Even if Regions were responsible for the SBA's withdrawal, it remains true that Regions performed under the various loan

---

[36]    R. Doc. 37-6 at 9 ("In fact, the Defendants have a lender ready and willing to move forward with a buyout of the Loan *but for* the lack of SBA backing").

[37]    *Id.* at 7-8.

[38]    *Id.* at 10.

14

agreements by lending money to Gator Equipment. Furthermore, defendants provide no evidence that Regions' conduct vis-à-vis the SBA, if any, caused or contributed to defendants' failure to repay Gator Equipment's loans. Gator Equipment's argument that it could refinance the loan now if only it had an SBA guarantee does not demonstrate that Regions caused Gator Equipment to default on its payments in August 2015.[39]

Defendants again argue that there is a genuine issue of disputed material fact as to the validity of the late fees and the prepayment penalties. Defendants argue that under 13 C.F.R. § 120.221(d), Regions may not charge a late payment fee in excess of 5 percent of the regular loan payment. The promissory notes executed by Gator Equipment provide for late charges of five percent of the unpaid portion of the monthly payment due.[40] Therefore, even if the SBA's regulations applied, and Gator Equipment could enforce

---

[39]     Gator Equipment has not pointed to anything in the Business Loan Agreement that would obligate Regions to assist Gator Equipment in securing refinancing or to wait for Gator Equipment to refinance before collecting amounts due. Furthermore, although the record is unclear as to the amount of the loans that was initially guaranteed by the SBA, by law the SBA can guarantee only a maximum of 75 percent of any loan above $150,000. 13 C.F.R. § 120.210. The total amount loaned here was over $4,500,000, so even if the SBA guaranteed the maximum, there would still be over $1.1 million not guaranteed by the SBA. This casts doubt on the plausibility of Gator Equipment's assertion that "but for" the lack of SBA backing, Gator Equipment would be able to refinance, particularly since it has been unable to service its debt since August 2015.

[40]     R. Doc. 30-3 at 7, 10, 12.

15

them, section 120.221 (d) provides no basis for altering Regions' late fee assessment. Similarly, while defendants correctly point out that SBA regulations prohibit lenders from assessing fees for the full or partial prepayment of an SBA-guaranteed loan, 13 C.F.R. § 120.221(e), there is no dispute that the loans in question are no longer subject to an SBA guarantee.

To the extent defendants suggest that some portion of the prepayment penalty demanded by Regions may have been incurred as a result of defendants' "prepayment of the Loan while the Loan was SBA guaranteed,"[41] this argument fails as well. Only one of the three promissory notes provides for a prepayment penalty. That note states that "upon prepayment of this note, Lender is entitled to" a penalty "equal to 2% of the outstanding loan balance . . . ."[42] This penalty is assessed "if the loan is prepaid in whole on or before five years from the date of this note . . . ."[43] To date, defendants have yet to tender payment of amounts due under the promissory note, and all parties agree that the note is no longer backed by the SBA. Thus, regardless of when the SBA discontinued its guarantee, defendants did not incur a prepayment penalty while the loan was subject to an SBA guarantee.

---

[41]   R. Doc. 32-11 at 16.
[42]   R. Doc. 30-3 at 10.
[43]   *Id.*

Finally, defendants put forward two new arguments to resist summary judgment.  First, defendants argue that contrary to Regions' assertion that Gator Equipment defaulted on the Business Loan Agreement because it permitted its ratio of EBITDAR to Interest Expense to fall below 1.25 times, Gator Equipment complied with the EBITDAR provision.[44]  Gator Equipment submits evidence of calculations of Gator Equipment's debt prepared by Kerney F. Craft, Jr., Gator Equipment's CPA.[45]  Craft's calculations show that Gator Equipment's EBITDAR ratio as of December 2014 was 1.39 and therefore in compliance with the Business Loan Agreement.[46]  Even if defendants are correct that they were compliant with the EBITDAR provision, this does not establish that Gator Equipment is not in default of the Business Loan Agreement. There is no question of material fact as to defendant' failure to pay amounts when due under the Business Loan Agreement, and there is no question of material fact that failure to pay amounts due under the Agreement constitutes a default. Therefore, any factual dispute concerning the EBITDAR-related default is irrelevant and is not sufficient to defeat Regions' motion for summary judgment.

---

[44]   R. Doc. 37-6 at 11.
[45]   R. Doc. 37-1 at 4.
[46]   *Id.*

17

Similarly, defendants argue that Regions' assertion that Gator Equipment failed to deliver the proceeds of the sale of certain collateral (as described in the Security Agreements) and that this failure resulted in default is incorrect because, according to Gator Equipment, Regions waived this provision of the Business Loan Agreement.[47]  In support, Gator Equipment submits the affidavit of Joey Don Pierce, which attests to his belief that Regions waived this requirement.[48] Just as with the EBITDAR argument, any waiver of this provision would not negate Gator Equipment's default status for failure to pay the amounts due.

Gator Equipment does, however, submit evidence (the Pierce affidavit) that after selling collateral it paid approximately $55,000 to Regions.[49]  In its reply in support of its motion for summary judgment, Regions does not respond to Gator Equipment's evidence that it paid Regions approximately $55,000. Regions has ten (10) days to respond and provide evidence as to whether the outstanding indebtedness of Gator Equipment should be reduced by the amount recovered from Gator Equipment's sale of collateral, and if not, why not.

---

[47]  R. Doc. 37-6 at 11-12.

[48]  R. Doc. 37-1 at 2-3.

[49]  *Id.*

18

To summarize, defendants submit no relevant evidence or applicable law supporting a challenge to the existence of the Business Loan Agreement, the validity of the various agreements, the enforceability of any of the various agreements, or defendants' status in default. Defendants' arguments regarding the SBA's withdrawal of its guarantee and SBA regulations are legally misplaced and have no bearing on defendants' liability to Regions. Similarly, defendants' arguments on the EBITDAR and proceeds-related defaults do not negate defendants' liability on the amounts due under the Business Loan Agreement. Therefore, Regions is entitled to a judgment as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Regions' motion for summary judgment as to the validity and enforceability of the various agreements, and to defendants' status in default.  IT IS ORDERED that Regions submit within ten (10) days of entry of this order a brief on whether Gator Equipment's debt should be reduced by approximately $55,000.

New Orleans, Louisiana, this  22nd  day of August, 2016.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE